**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **SIDNEY HARRIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 3:19 -CV-00660 -MAB** |
| ) | |
| **LARRY HENDERSON, ET AL.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Banks, Dennison, Pickford, and

Smith's motion, and supporting memorandum, for summary judgment (Docs. 42, 43).

Plaintiff filed one response to the motion for summary judgment (Doc. 47). For the

reasons set forth below, the motion is **GRANTED in part and DENIED in part**.

### BACKGROUND

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on June 18, 2019

for deprivations of his constitutional rights while incarcerated at Shawnee Correctional

Center ("Shawnee") (Doc. 1, 15). Plaintiff claims that Defendants Banks[1], Pickford, and

Dennison exposed him to substantial risk of serious physical injury by keeping him

housed near another inmate after he was assaulted. Additionally, Plaintiff alleges that

---

[1] It appears that Defendant Bryant should be named "Defendant Banks." *See* Defendants' Answer, filed
on June 18, 2020 (*e.g.,* "Defendant Brian Banks, 'listed as Officer Bryant.') (Doc. 26, p. 1). The Clerk of the
Court is DIRECTED to modify the docket to reflect Officer Bryant's true name. Officer Bryant should
RENAMED as Officer Brian Banks.

Defendant Smith was deliberately indifferent to a serious mental health issue (Docs. 1, 15). After a threshold review, pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on two counts against Defendants:

> **Count 1:**   An Eighth Amendment claim against Banks, Pickford, and Dennison for exposing him to a substantial risk of serious physical injury by keeping him housed near inmate Daniel after his sexual assault;

> **Count 2:**   An Eighth Amendment claim against Smith for deliberate indifference to a serious mental health issue (Doc. 15).

Defendants Banks, Dennison, Pickford, and Smith filed their motion for summary judgment on September 24, 2020, arguing that Plaintiff failed to exhaust administrative remedies before filing this action (Docs. 43, 44). Plaintiff filed a response to the motions for summary judgment on October 9, 2020 (Doc. 48).

An evidentiary hearing, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on February 16, 2021 (Doc. 52). Plaintiff was the only witness who testified at the hearing.

## LEGAL STANDARDS

### *Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment.

*E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014).

## Exhaustion

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozzo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to

attempt to resolve the dispute through his or her counselor. *Id.* at § 504.810(a).[2] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id. at* § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

Though the Seventh Circuit requires strict adherence to the exhaustion

---

[2] There are exceptions to this rule. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

## FACTUAL BACKGROUND

At all relevant times, Plaintiff has been an inmate with the Illinois Department of Corrections ("IDOC"). He is currently housed at Jacksonville Correctional Facility, but was housed at Shawnee when the allegations in his complaint arose (Doc. 43, p. 2; Doc. 43-1). When Plaintiff first arrived at Shawnee, he completed the Offender Orientation Program on or around August 4, 2017, during which he received information regarding the policies and procedures followed at Shawnee, including the grievance procedures (Doc. 43-8, p 9).

In Plaintiff's complaint, he alleges that he was targeted and mistreated by Shawnee employees and staff, which caused him to fear for his health, safety, and life (Doc. 15, p. 2). In January 2018, Plaintiff was sexually assaulted by his former cellmate, Ashton Daniel (*Id.* at 3). He called the Prison Rape Elimination Act ("PREA") hotline and reported the incident. Plaintiff alleges he sent written statements to Defendants Pickford and Banks (officers with Internal Affairs at Shawnee) and Warden Dennison both about the incident and his fears of retribution by Daniel for reporting the incident. Nevertheless, Plaintiff

remained housed in the same facility (and for a time in the same housing unit) as Daniel, causing him severe emotional and mental distress (*Id.*).

Plaintiff has been diagnosed as seriously mentally ill ("SMI"), suffering from depression, schizo-affective disorder, and schizophrenia (*Id.*). He also claims that Defendant Amanda Smith, a mental health professional and later a supervisor of the mental health unit, was aware of Plaintiff's mental illnesses and issues, but did nothing to see Plaintiff or have him seen more often by other mental health counselors (*Id.*).

**The Administrative Review Board's Records**

Defendants submitted a declaration from Ms. Sherry Benton, Chairperson for the Office of Inmate Issues for IDOC, which is also known as the Administrative Review Board ("ARB"). Her duties involve, among other things, reviewing and responding to grievances filed by the IDOC inmates and maintaining knowledge of the ARB record keeping system (Doc. 43-2). The ARB maintains a log known as the IGRV, which shows the grievances received by the ARB for each prisoner (Doc. 43-3).

Prisoners may file grievances directly with the ARB for certain issues, including 1) decisions involving the involuntary administration of psycho-tropic medication; 2) decisions regarding protective custody placement, including continued placement in or release from protective custody; 3) decisions regarding disciplinary proceedings which were made at a facility other than the facility where the inmate is currently assigned; and 4) other issues except personal property issues and medical issues which pertain to a facility other than the facility where the inmate is currently assigned (Doc. 43-2, pp. 2-3).

It appears that Plaintiff submitted approximately eleven grievances from January 2018 through June 2020 to the ARB (Docs. 43-2; 43-3). [3] Defendants focus on three grievances they contend could pertain to the issues in this case: (1) the March 29, 2018 grievance; (2) the June 10, 2018 grievance; and (3) the June 20, 2018 grievance, and Plaintiff seemed to agree with Defendants at the *Pavey* hearing (Doc. 43-4, pp. 38-41; 28-32; 17-20). [4]

I.    Plaintiff's March 29, 2018 Grievance

In Plaintiff's March 29, 2018 grievance, he describes being sexually assaulted in January 2018 by another inmate and complained of being mistreated by staff. He wrote, "This is my third grievance. I wrote similar grievances to this and I have not received back my grievances with responses" (Doc. 43-4, p. 41). Plaintiff testified at the *Pavey* hearing that he submitted this grievance straight to the ARB without a counselor, grievance officer, or CAO response because he had previously submitted multiple grievances related to these issues and had not received any responses back, so he thought it best to go directly to the ARB. Plaintiff also argues that since he had not received

---

[3] (1) October 16, 2017 Grievance, received by the ARB on January 4, 2018 (Doc. 43-4, pp. 42-44); (2) March 23, 2018 Grievance, received by the ARB on May 25, 2018 (*Id.* at 33-37); (3) March 29, 2018 Grievance, received by the ARB on May 25, 2018 (*Id.* at 38-41); (4) May 7, 2018 Grievance, received by the ARB on August 9, 2018 (*Id.* at 23-27); (5) June 10, 2018 Grievance, received by the ARB on June 15, 2018 (*Id.* at 28-32); (6) June 20, 2018 Grievance, received by the ARB on September 4, 2018 (*Id.* at 17-20); (7) August 3, 2018 Grievance, received by the ARB on August 21, 2018 (*Id.* at 21-22); (8) March 18, 2019 Grievance, received by the ARB on June 10, 2019 (*Id.* at 5-8); (9) March 28, 2019 Grievance, received by the ARB on April 23, 2019 (*Id.* at 9-12); (10) April 6, 2019 Grievance, received by the ARB on April 23, 2019 (*Id.* at 13-16); (11) May 19, 2019 Grievance (received by the ARB on August 19, 2019) (*Id.* at 1-4).

[4] Arguably, Plaintiff's March 23, 2018 Grievance (*e.g.,* "I've filed a lot of grievances and not received a response) could also relate to the issues in the present matter.

responses from his counselor, he started attaching a "proof of service" to his grievances, like the one he attached to this grievance (*Id.* at p. 39).

The ARB returned this grievance without review since Plaintiff had not provided his grievance officer or CAO's responses, and had not included dates so that the ARB could determine whether it was timely (*Id.* at p. 38). Additionally, Ms. Benton of the ARB wrote, "At Shawnee, you have 60 days from known incident date to file grievance. Only exception is PREA. Go see MH Staff. Read and follow DR 504F. No Review for this submission" (*Id.*). The ARB indicated this grievance is about "mistreatment by staff. PREA…MH…TV broken" (*Id.*).

II.     Plaintiff's June 10, 2018 Grievance

Like Plaintiff's March 2018 grievance, his June 10, 2018 grievance was also sent directly to the ARB without a counselor or CAO response. In this grievance, Plaintiff directly addresses this issue, stating, "I know that I don't suppose to send a grievance straight to the Administrative Review Board, that I suppose to wait for a counselor's response and forward to the Grievance Officer for another response before forwarding it to the A.R.B., but I waited months and got no response. Filed multiple grievances concerning the matters therein…so please hear this grievance" (*Id.* at p. 29). He continues, stating that he fears for his health and safety at Shawnee, as staff members are mistreating him after he was sexually assaulted (*Id.* at pp. 31-33).

The ARB received this grievance on June 15, 2018 and reviewed it on June 21, 2018, stating that Plaintiff must follow DR 504 and include a copy of the grievance officer and CAO's responses (*Id.* at p. 28). In addition, the ARB denied this grievance as this issue

was already addressed by the office on June 5, 2018; however, there does not appear to be a June 5, 2018 ARB response in the record (*Id.*).

Plaintiff's cumulative counseling summary includes an entry about this grievance as well. The packet was received by Shawnee from the ARB on July 30, 2018. The note indicates this grievance was previously addressed on June 5, 2018 and that the ARB requests Plaintiff to provide dates for the incident as well as his counselor's response (Doc. 43-8, p. 6).

III.    Plaintiff's June 20, 2018 Grievance

Plaintiff's June 20, 2018 grievance appears to be the only grievance in the record where Plaintiff followed the appropriate steps outlined in the Administrative Code. Plaintiff complained of being mistreated by Shawnee staff in this grievance, including Defendants Pickford and Banks. In addition, he mentions the January 2018 assault and argues it was not properly investigated by staff. He details he fears for his life at Shawnee (Doc. 43-4, pp. 17-20).

Plaintiff submitted this grievance to the Grievance Officer before submitting it to the ARB (*Id.* at p. 18). Plaintiff's Grievance Officer received this grievance on July 3, 2018 and reviewed it on July 30, 2018. The CAO signed it on July 31, 2018. This grievance is logged in the Shawnee second level grievance log, but it does not appear to be logged in Plaintiff's cumulative counseling summary (Doc. 43-6, p. 1).[5]

---

[5] There may be a note about this grievance in Plaintiff's cumulative counseling summary, but the record is unclear. Plaintiff's cumulative counseling summary indicates that on September 18, 2018, Shawnee received a packet from the ARB with a grievance response to an undated grievance. The note indicates it

The ARB received this grievance on September 4, 2018 and denied it as being "out of time." The ARB determined this grievance covered issues related to "TV…Staff" and the PREA (Doc. 43-4, p. 17). Again, although the ARB wrote that they addressed this issue previously on June 5, 2018, there does not appear to be anything in the ARB's records of a review of a grievance that is dated June 5, 2018 (*Id.*).

**Shawnee's Records**

Defendants also submitted a declaration from Mr. Bob Allard, who is employed by the IDOC as a Clinical Services Supervisor and serves as the Grievance Officer at Shawnee (Doc. 43-5). Prior to December 2018, Shawnee maintained two logs related to grievances received at the facility—a log of grievances received as "emergency grievances" and a log of grievances received by the grievance office for second level review (*Id.*). A log of grievances received by the counselors for first level review at the facility was not maintained during this time (Docs. 43, p. 3; 43-5). Starting in December 2018, Shawnee began utilizing a "Grievance Receipt Log," which recorded the dates each grievance was received for various levels of review (*e.g.*, emergency, first level review by the counselor, and second level review by the grievance officer) (Docs. 43-5; 43-7).

Shawnee's grievance records show Plaintiff submitted six grievances marked "emergency" from December 2017 through November 2018 (Doc. 43-6, pp. 1-2). During that same time period, records show Plaintiff submitted three grievances for second level

---

was returned to Plaintiff because this issue was previously addressed on 6/5/18 and it was submitted out of time (Doc. 43-8, p. 6).

review (*Id.* at p. 2). From December 2018 through July 2019, Plaintiff submitted an additional twelve grievances for consideration at the facility (*Id.* at pp. 3-4). The following grievances are related to the issues in the present matter:

I.   June 20, 2018 Grievance (Doc. 43-7, p. 46).

This June 20, 2018 grievance also appears in the ARB's records and was filed as an emergency, a designation the CAO approved on July 3, 2018 (Doc. 43-7, p. 46). It was then reviewed by the grievance officer and denied (*Id.* at p. 45). Plaintiff details in this grievance that he is in "total mental and emotional anguish" and that he fears for his life and safety from staff at Shawnee. Plaintiff details the sexual assault and names Defendants Pickford and Banks in this grievance (Doc. 47, p. 2). Additionally, he details that he has been on crisis and suicide watch twice for the issues he's experiencing (Doc. 43-7, p. 48).

II.  January 8, 2019 Grievance (Doc. 43-7, p. 41)

Shawnee's records contain a January 8, 2019 grievance in which Plaintiff details that he is still struggling with the sexual assault that happened in January 2018. He explains that he wakes up screaming and has informed mental health staff about this, but they are not giving him the proper mental health treatment. He states that he his issues with sleeping and nightmares related to the January 2018 sexual assault.

Plaintiff filed this grievance with his counselor, who then sent it to the mental health department at Shawnee, where Defendant Smith wrote a response (*Id.* at p. 40). Once returned by his counselor, on January 14, 2019, Plaintiff did not submit it for a

second level review, and there is no record of this grievance making its way to the ARB (Doc. 43, p. 12).

**Additional Records**

In Plaintiff's response to the motion for summary judgment (Doc. 47), he argued repeatedly that he filed numerous grievances that were never returned to him because of issues with Shawnee's internal grievance process at the time. Plaintiff testified to this as well at the *Pavey* hearing, and stated that he included evidence of these missing grievances attached to his original complaint. After review of the complaint, it appears that plaintiff attached copies of the grievances he also submitted with his response to the motions for summary judgment, which are reflected in Defendants' records as well. Plaintiff does attach a selection of his medical records to his complaint, but he does not include any copies or additional evidence of missing grievances (*See generally* Doc. 1).

Also included in the record is Plaintiff's cumulative counseling summary, which is a log of Plaintiff's experiences while incarcerated (Doc. 43-8). On May 30, 2018, there is a note that indicates that Plaintiff requested copies of all of the grievances he submitted while at Shawnee and that prison officials sent him his Masterfile after this request. The note indicates that Plaintiff was dissatisfied with what was returned to him because the Masterfile seems to have only included one grievance and Plaintiff submitted more (Doc. 43-8, p. 7). Later, on June 13, 2018, Plaintiff's cumulative counseling summary includes a note that states, "Rec'd response from Grievance Coordinator regarding other grievances the offender thinks the Record Office should have. The one (1) grievance in the file signed by the warden on 3/5/18 is currently the only grievance the Record Office has. Response

to offender, cc Masterfile, cc unit counselor, cc grievance coordinator" (*Id.*). Plaintiff repeatedly highlighted issues with the Shawnee grievance process at the *Pavey* hearing, describing how prisoners had to submit their grievances in a box where inmates also placed health care slips, mail, and everything else that was to be sent internally within the prison and out of the prison. Plaintiff also highlighted this issue in some of his grievances as well (Doc. 43-4, pp. 20, 41).

Plaintiff included a selection of his medical records with his response, including a crisis watch discharge assessment completed by Defendant Smith on February 26, 2018 (Doc. 47, p. 13). In July 2019, Plaintiff was transferred from Shawnee to Jacksonville (Doc. 43-1).

## Discussion

In their motion for summary judgment, Defendants argue that Plaintiff failed to exhaust any of his grievances as to any of his claims because he failed to follow the procedures set forth in the Illinois Administrative Code and Department Rule 504, despite his knowledge of the grievance process (Doc. 43, p. 7). Defendants argue that there is not a single fully exhausted grievance in the record that relates to the issues in Plaintiff's case.

Plaintiff disagrees, and believes that he fully exhausted his claims, as he argues the system for filing grievances at Shawnee at the time was difficult to navigate and he was, essentially, thwarted from following the steps outlined in the Administrative Code to grieve his claims. Plaintiff testified at the *Pavey* hearing that he did the best he could to ensure his grievances followed the Administrative Code, but certain internal systems

prevented him from always filing his grievances in the appropriate manner. He explained that at the time, Shawnee had one box that collected prisoner mail, health care unit slips, and grievances. He placed all of his grievances in that box and some were answered while others were not. *See also* Doc. 43-4, pp. 20, 41. At the time, Shawnee also did not keep a record of grievances that received a first level counselor review (Docs. 43, p. 3; 43-5 ). Accordingly, there is no way to determine whether Plaintiff's missing grievances ever made it out of this catch-all mailbox and to the appropriate parties since no grievances were recorded at the first level of review. Plaintiff testified that even despite these challenges, he did fully exhaust his June 20, 2018 grievance.

The Seventh Circuit has made clear that normally, the Court does not resolve factual disputes at the summary judgment stage. *See, e.g. Roberts,* 745 F.3d at 234. But when there is a motion for summary judgment as to the issue of exhaustion and a factual dispute remains, that is exactly what the Court must do: weigh the evidence and resolve the dispute. *Wilborn,* 881 F.3d at 1004. Here, based on the evidence presented in the briefs and at the hearing, the Court finds that Defendants Pickford and Banks have failed to carry their burden of proof on the affirmative defense of exhaustion and, therefore, summary judgment as to those Defendants should be denied. Defendants Dennison and Smith, on the other hand, have met that burden and should be dismissed. It is critical to keep in mind Seventh Circuit precedent establishing the exhaustion requirement is an affirmative defense, which the *defendants bear the burden of proving. Pavey*, 663 F.3d at 903 (citations omitted).

I.      June 20, 2018 Grievance

Plaintiff's June 20, 2018 grievance includes information about Plaintiff's current mental state (*e.g.*, "I'm in total mental & emotional anguish being here in Shawnee…I been suffering emotionally & mentally…I'm fear for my health, safety, & life…I'm being purposely mistreated & targetted[sic] by staff/employees") (Doc. 43-4, p. 19). He explains a variety of issues he is experiencing that are contributing to his current deteriorating mental health state. He mentions that he was sexually abused by a former cellmate and called the PREA hotline to report it. After, he claims Internal Affairs did not complete a proper investigation. He then mentions Defendants Pickford and Banks[6] by name (*Id.* at p. 20).

Defendants argue this grievance does not address Plaintiff's claims in the present matter, but that argument is unavailing. Plaintiff brings two claims in this lawsuit, the first of which is an Eighth Amendment claim against Defendants Dennison, Banks, and Pickford for exposing him to a substantial risk of serious physical injury by keeping him housed near inmate Daniel after his sexual assault. The regulations instruct that grievances should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." ILL. ADMIN. CODE, tit. 20, § 504.810(c). Additionally, the Seventh Circuit indicates that an inmate should "articulat[e] what facts the prison could reasonably expect from a prisoner *in his position*." *Glick v.*

---

[6] He refers to Defendant Banks as "Bryant."

*Walker*, No. 09-2472, 385 Fed. Appx. 579, 2010 U.S. App. LEXIS 14361, at *6-7 (7th Cir. July 13, 2010). Plaintiff has significant mental health diagnoses and throughout the time leading up to this lawsuit, he attempted to file grievances related to his current mental health care and overall treatment by Shawnee staff after an alleged sexual assault. In this grievance, in particular, Plaintiff describes the mental health issues he is experiencing in detail, as well as identifies Defendants Banks and Pickford by name. He also describes issues surrounding his PREA call and report, and his concerns for his safety after the PREA investigation. As Plaintiff's Eighth Amendment claim against Defendants Banks and Pickford relates to his safety after this alleged sexual assault, Defendants are incorrect and this grievance does relate to at least one of Plaintiff's claims.

Plaintiff submitted this June 20, 2018 grievance as an emergency grievance directly to the warden. It was received on July 3, 2018 by the CAO's office. Bob Allard, the grievance officer, then conducted an expedited review as the CAO's office agreed this was an emergency grievance. Mr. Allard's review occurred on July 30, 2018. Ultimately, Mr. Allard denied Plaintiff's grievance, stating that the investigation into the PREA claim did not substantiate Plaintiff's allegations and they could not find ways in which Plaintiff had been retaliated against by Shawnee staff. Mr. Allard denied Plaintiff's grievance. The grievance was then sent back to the CAO's office. The CAO agreed with Mr. Allard's findings, and signed the grievance on July 31, 2018.

Up until this point, the parties agree that this grievance was submitted through the appropriate channels as an emergency grievance because an inmate may request that a grievance be handled as an emergency by forwarding the grievance directly to the

warden. 20 ILL. ADMIN. CODE, TIT. § 504. 840. *See also Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005). Defendants argue that after this grievance was reviewed by the CAO, it was not timely filed with the ARB and, therefore, it was not fully exhausted. The Administrative Code specifies that if, after receiving the response from the CAO, the prisoner still believes that the grievance has not been resolved, he may appeal to the ARB and the ARB must *receive* the grievance within 30 days after the date of the CAO's decision. 20 ILL. ADMIN. CODE, TIT. § 504.850(a). Since the CAO signed the grievance on July 31, 2018, the grievance must have been received by the ARB by Thursday, August 30, 2018; however, it was stamped as received by the ARB on Tuesday, September 4, 2018, four days past the deadline (Doc. 43-4, p. 18). For Defendants, it is a straightforward issue of timeliness—the letter did not make it to the ARB by August 30 and, therefore, it was not timely filed. In turn, this means that Plaintiff did not fully exhaust this grievance.

When the ARB received Plaintiff's grievance on September 4, 2018, they did not review because it was not submitted in the timeframe outlined by Department Rule 504 (*Id.* at p. 17). The ARB's return of the grievance correspondence form was signed on September 10, 2018 and returned to Plaintiff (*Id.*).[7] At the *Pavey* hearing, the parties discussed whether there were any exceptions to the aforementioned timeline because this grievance addresses a PREA issue. Defendants argued that this grievance was properly returned to Plaintiff as out-of-time because although the PREA modifies some of the

---

[7] Additionally, the ARB indicated that this office had previously addressed some of Plaintiff's issues outlined in this grievance on June 5, 2018; however, there does not appear to be a grievance matching that date in the record, so the Court cannot verify that the ARB previously addressed these issues.

exhaustion requirements (*e.g.*, eliminating time restrictions for initiating a grievance regarding sexual assault), it does not provide a completely alternative grievance process. *See* 28 C.F.R. § 115.52. Plaintiff is still required to follow the process at 28 C.F.R. § 542.10, *et seq.*, subject to PREA's modifications. Defendants are correct. A prisoner still must exhaust PREA grievances by going through the steps outlined in the Administrative Code and must abide by the timelines in the Code once they initiate the grievance process. With that said, prisoners filing a PREA grievance do not have to initiate the grievance process within the 60 days from the incident like they would for other grievances. *See* 20 Ill. Admin Code, tit. § 504.810(a). Put simply, prisoners can take more time to initiate a PREA grievance than a regular grievance. *See generally Parry v. Muller,* No. 18-cv-1394-JPG, 2018 WL 4027572, at *3 (S.D.Ill. Aug. 23, 2018).[8] Since the delay in Plaintiff's grievance occurred in the middle of the process, the aforementioned PREA timing exception does not apply. But this is not the end of the analysis because the record reveals there is an issue with the form Plaintiff used in submitting his appeal to the ARB that also has an impact on the timeline.

Plaintiff's June 20, 2018 grievance form includes language instructing Plaintiff how to submit his appeal to the ARB. On the form, after the CAO's signature, is a box where Plaintiff must sign and date a short statement indicating that he is appealing the grievance officer and CAO's decision. It reads as follows:

---

[8] PREA outlines that the agency will not impose a time limit on when an inmate may submit a grievance regarding a sexual assault, as well as will not force an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse. *See* 28 C.F.R. § 115.52.

> I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be *submitted* within 30 days after the date of the Chief Administrative Officer's decision to the Administrative review Board, P. O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents).

(Doc. 43-4, p. 18) (emphasis added).

Plaintiff signed this statement and dated it August 28, 2018, just within the 30 days after the date of the CAO's July 31st decision (*Id*.).

Plaintiff has a significant number of grievances in the record and after close examination of these grievances, there are two different sets of forms: one with the language outlined above and one with a different statement altogether. The second form in the record substituted, "I understand this appeal must be *submitted* within 30 days," with the following: "I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be *received by* the" ARB (Doc. 43-7, p. 1) (emphasis added).   The key language here is "submitted within" and "received by." The "received by" form indicates it was revised in March 2019, while the form using the "submitted by" language was revised in October 2001 (Docs. 43-7, p. 1; 43-4, p. 18). All of Plaintiff's grievances received by the ARB during this time period were on the 2001 form that states the grievance must be "submitted" within thirty days (*See generally* Doc. 43-4). It also appears that Shawnee was using both forms interchangeably, as there are grievances in the record dated in both 2018 and 2019 on both versions of the forms (*See* Docs. 43-4, p. 18; 43-7, p. 1).

The Seventh Circuit has addressed the issue of outdated grievance forms when it comes to naming individual defendants. On grievances, there is a space for prisoners to outline the particulars of the incident they are grieving. For some time, the IDOC used an older form that did not ask prisoners to name specific people in this section, even though the Administrative Code states that prisoners should name individuals and if they cannot name them, they should provide a detailed description of them in their grievances. Requiring prisoners to include these sorts of specific descriptions came about after the Administrative Code was revised, because prior to these revisions, Section 504.810 did not require prisoners to "draft their grievances with any specific degree of factual particularity and [they] were not required to identify, by name or otherwise, the individuals responsible for the events…" *Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011). When prisons use older grievance forms that do not reflect the current version of the Administrative Code, the Seventh Circuit has held that the omission of names or identifying information does not mean that the prisoner failed to exhaust his administrative remedies *so long as* the grievances still give prison administrators a fair opportunity to address the prisoner's complaints. *Maddox*, 655 F.3d at 721–22. *Accord Jackson v. Shepherd*, 552 Fed. Appx. 591, 593 n.1 (7th Cir. 2014); *Conley v. Anglin*, 513 Fed. Appx. 598, 601 (7th Cir. 2013).

Plaintiff's situation is analogous. It appears that Shawnee was using two sets of forms, one revised in 2001 and the other revised in 2019, which is significant since the current Administrative Code was revised in 2017. 20 ILL. ADMIN. CODE, TIT. § 540.810 (effective April 1, 2017). Prior to the 2017 changes, prisoners were not required to ensure

that the ARB receive the appeal within thirty days.[9]  20 ILL. ADMIN. CODE, TIT. 504.850(a)

("If, after receiving the response of the Chief Administrative Officer, the offender still

feels that the problem, complaint, or grievance has not been resolved to his or her

satisfaction, he or she may appeal in writing to the Director within 30 days after the date

of the decision."). The majority of Plaintiff's grievances on record with the ARB are on

grievance forms revised in 2001. Those forms require him to sign a statement that he is

submitting the grievance within thirty days of the CAO's signature. As for this June 20,

2018 grievance, in particular, the CAO signed it on July 31, 2018 and Plaintiff submitted

it to the ARB on August 28, 2018, within that 30-day deadline. "Submitted by" could

logically mean that the prisoner must put that grievance in the mail system within 30

days. "Received by" is much clearer, meaning that the prisoner must ensure he mails the

grievance with enough time to be received by the ARB within 30 days. As Defendants

have the burden of proof at this stage, the ambiguity of these competing forms cuts

against Defendants' arguments, particularly when considered in tandem with the 2017

Administrative Code revisions requiring prisoners to ensure their appeals reach the ARB

within thirty days.

   As such, the Court determines this June 20, 2018 grievance was properly filed. Yet,

it was returned to Plaintiff without being reviewed by the ARB. "A remedy becomes

unavailable 'if prison employees do not respond to a properly filed grievance or

---

[9]  *See 2016 Illinois Registry: Rules of Governmental Agencies,*
https://www.cyberdriveillinois.com/departments/index/register/volume40/register_volume40_issue2
7.pdf, p. 49 (last visited February 19, 2021).

otherwise use affirmative misconduct to prevent a prisoner from exhausting.' " *Kyles v. Beaugard,* No. 15 C 8895, 2017 WL 4122708, at *3 (N.D. Ill. Sept. 18, 2017) (citing *Pyles v. Nwaobasi*, 829 F.3d 860, 869 (7th Cir. 2016)). Since this grievance was properly filed and the ARB did not respond to the substance of the grievance, the grievance process for this June 20, 2018 grievance became unavailable to Plaintiff. Therefore, the Court finds that this grievance was fully exhausted as to Plaintiff's Eighth Amendment claim against Defendants Banks and Pickford, the only Defendants named and described in this grievance.

II.    <u>Plaintiff's Other Grievances and Remaining Defendants</u>

As for Plaintiff's second claim (a deliberate indifference claim against Defendant Amanda Smith regarding Plaintiff's mental health treatment) and his claim against Defendant Dennison, Plaintiff is not successful. There is simply no evidence in the record to tie any of Plaintiff's grievances to issues with either Defendants Dennison or Smith.

Grievances are intended to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit . . . . {E}arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013) ("The exhaustion requirement's primary purpose is to alert the state to the problem and invite corrective action.") (internal quotation marks and alterations omitted;

citation omitted); *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.").

The current Illinois Administrative Code mandates that grievances include the name, or at least a description, of the persons involved in the complaint, ILL. ADMIN. CODE, tit. 20 § 504.810(c). As the Court previously outlined, even when prisons use older grievance forms that do not reflect this change to the Administrative Code, prisoners must still give enough information so that prison administrators have a fair opportunity to address the prisoner's complaints, even if they do not have to name specific people in the grievance. *Maddox,* 655 F.3d at 721–22. *Accord Jackson v. Shepherd,* 552 Fed. Appx. 591, 593 n.1 (7th Cir. 2014); *Conley v. Anglin,* 513 Fed. Appx. 598, 601 (7th Cir. 2013). Defendant Dennison is not named or described in *any* of Plaintiff's grievances. There is nothing in the record to tie Defendant Dennison to Plaintiff's claims. Even at the *Pavey* hearing, when asked if he added Defendant Dennison to his grievances, Plaintiff testified that he did not know. As such, Plaintiff did not exhaust his claim against Defendant Dennison.

As for Defendant Smith, she is mentioned approximately two times in the record. The first is related to Plaintiff's January 8, 2019 grievance, which was sent to clinical services and received on January 9, 2019 (Doc. 43-7, p. 41). Plaintiff does not name Defendant Smith in this grievance or describe any issues with the care she provided. It seems like the only tie to Defendant Smith is that she was the official who reviewed this grievance on January 14, 2019. She concluded that Plaintiff's current mental health

treatment was appropriate and that he would continue to be provided with mental health services (*Id.* at p. 40). Plaintiff did not appeal this grievance to the ARB after Defendant Smith's review.

The second mention of Defendant Smith in the record is in Plaintiff's medical records, some of which were attached to Plaintiff's response to the motion for summary judgment (Doc. 47). Specifically, Plaintiff included a crisis watch discharge assessment completed by Defendant Smith on February 26, 2018 (*Id.* at p. 13). Defendant Smith's note on this discharge assessment details that Plaintiff does not have any mental health concerns and he states that he is fine (*Id.*). Again, this discharge note is not enough to fully grieve Plaintiff's claim against Defendant Smith. Although Plaintiff argued in his response to the motion for summary judgment that he will prove Defendant Smith had knowledge of the PREA sexual abuse allegation, the time for that proof is at this stage and Plaintiff has not provided the Court with any documents or concrete information that he properly submitted grievances as to Defendant Smith's actions (*Id.* at pp. 3-4). Similarly, at the *Pavey* hearing, Plaintiff stated that he thought he named Defendant Smith in one of his grievances, perhaps attached to his original complaint, but after review, Defendant Smith's name, or a description of her actions, is not included in any of those grievances.

And finally, Plaintiff's general contention that he was thwarted is insufficient to stave off summary judgment when it comes to the claims against Defendants Smith and Dennison. In short, other than the general contentions and issues outlined above, Plaintiff failed to offer any specific instance when he grieved issues regarding Defendants Smith

and Dennison where he was prevented from pursuing it further or the process was made unavailable to him. Accordingly, Plaintiff failed to exhaust his administrative remedies as to Defendants Dennison and Smith prior to filing suit.

<u>C</u>ONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Defendants Banks, Pickford, Dennison, and Smith (Docs. 42, 43) is **GRANTED** in part and **DENIED** in part. Defendants Dennison and Smith are **DISMISSED without prejudice** for Plaintiff's failure to exhaust.

The Clerk of the Court is **DIRECTED** to modify the docket to reflect Officer Bryant's true name. Officer Bryant should **RENAMED** as Officer Brian Banks on the docket.

This matter shall proceed on Plaintiff's one claim against Defendants Banks and Pickford. The stay on merits-based discovery (*see* Doc. 27) is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: February 23, 2021**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**